IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**COLUMBUS GRAY**                                                                                       **PLAINTIFF**

V.                                      2:22CV103 JM

**BNSF RAILWAY COMPANY, f/k/a
BURLINGTON NORTHERN &
SANTA FE RAILWAY COMPANY**                                              **DEFENDANT**

## ORDER

Pending is Defendant's motion for summary judgment based upon two prior releases signed by the Plaintiff. The motion has been fully briefed. For the reasons set forth below, the motion is denied.

I.    Undisputed Facts

Plaintiff is a former employee of the Defendant. On August 4, 2004, Plaintiff signed a document entitled "Release and Settlement Agreement" ("the 2004 Agreement"). The 2004 Agreement stated in pertinent part that Plaintiff:

> release[s] and discharge[s] The Burlington Northern and Santa Fe Railway Company . . . from all claims and liabilities of every kind or nature, **INCLUDING CLAIMS FOR INJURIES, ILLNESSES, THEIR NATURAL PROGRESSION, OR DAMAGES, IF ANY, WHETHER KNOWN OR UNKNOWN TO ME AT THE PRESENT TIME**, including but not limited to, claims arising out of any and all of the following:
>
> An accident on or about **December 10, 2002**, at or near **Amory, Mississippi**, while I was employed as a/an **Bridge & Building Laborer.**
>
> Any and all other claims, whether known or unknown, including but not limited to illness, injuries, or damages resulting from alleged exposure to noise, smoke, fumes, dust, mixed dusts, gases, chemicals, fibers, or any other type of exposure. . ..
>
> \* \* \*
>
> The payment above is accepted by me in compromise settlement of disputed claims and such payment is not an admission of liability by said Releasees as to any of the aforementioned claims.
> . . .
> IT IS UNDERSTOOD AND AGREED that this settlement is a compromise of a doubtful and disputed claim, and that the payment made is not to be construed as

an admission of liability on the part of the parties hereby released, and that said parties deny liability therefore.

The 2004 Agreement was entered into knowingly and voluntarily by Plaintiff. Plaintiff's attorney at the time, Mr. Mark Stephens, also signed and witnessed the 2004 Agreement. The settlement amount was $175,000.

On August 21, 2017, Plaintiff signed a document entitled "Full and Final Settlement Agreement" ("the 2017 Agreement"). The 2017 Agreement read in pertinent part that Plaintiff released:

> []any and all claims and liabilities of every kind or nature, for occupational disease, personal injury, or wrongful death, INCLUDING CLAIMS FOR INJURIES, ILLNESS, OR DAMAGES, IF ANY, WHICH ARE UNKNOWN AT THE PRESENT TIME, arising out of or resulting from any alleged exposure to toxic or harmful substances, **as described in Releasor's petition, complaint, statement, discovery, including any expert reports and medical records**, allegedly caused, in whole or in part, by the Released Parties.
>
> Exposure or exposures referred to herein shall mean and include any and all substances or conditions to which the undersigned claimed he/she was exposed, or to any potential exposure claimed to which could have been claimed in this matter by Releasor, as an employee of the Released Parties or as a result of any exposure related to the Released Parties or which arises as a result of the Released Parties' operations or activities.
>
> * * *
>
> It is the intention of [the parties] that this Release and Settlement Agreement constitutes an immediate and permanent settlement of all of Releasor's claims that may arise, even though not now existent from the occupational exposures to asbestos and other toxic materials described in Releasor's complaint, petition, deposition, statement, expert report, or medical records. The occupational exposures Releasor described in such complaint, petition, deposition, statement, expert report, or medical records suggests that Releasor may have been at an increased risk for future development of cancer, including, but not limited to, lung cancer and malignant mesothelioma. **Releasor acknowledges awareness of this information.**

The 2017 Agreement stated that Plaintiff was specifically releasing Defendant from future claims based on potential exposure to allegedly toxic substances in the workplace:

> Releasor hereby acknowledges that acceptance of this settlement amount forever

2

> precludes any further recovery from BNSF for the development of any malignancy caused, in whole or in part, by occupational exposures to asbestos or other toxic materials referred to in the Complaint, deposition, statement, or other discovery referred to above. Releasor expressly acknowledges that he/she is aware of the risk of potential development of additional related conditions including cancer and malignant mesothelioma as a result of the exposures referred to above, and it is the intent of the Releasor to include such potential future conditions in this Release and Settlement Agreement.
>
> * * *
>
> I agree that I have had a full opportunity to read this Release, have read this Release, and have further had the opportunity to have it reviewed and explained to me by an attorney of my choice. I understand that this Release is intended to extend to any potential claims, past or future, of which I do not presently know of or suspect to exist at the time of executing this Release relating to the exposures alleged which, if known, may have affected the settlement but, notwithstanding, it is my desire and decision to fully and finally resolve any such claim for all time, including, but not limited to, future cancers and death. I fully understand the terms of this Release and they are voluntarily accepted by me.

The 2017 Release was entered into knowingly and voluntarily by Plaintiff. Plaintiff had the opportunity to consult with counsel and with a physician prior to signing the 2017 Agreement. The settlement amount was $9,500.

Plaintiff was diagnosed with Bladder Transitional Cell Carcinoma via a biopsy on November 4, 2019. Plaintiff filed suit in this Court on June 7, 2022. Plaintiff alleges that his bladder cancer was caused by the negligence of the Defendant by exposing Plaintiff to known cancer-causing materials in its operation. Specifically, Plaintiff alleges that while employed as a bridge and building carpenter for the Defendant throughout Arkansas, Florida, Mississippi, and Tennessee, he "was exposed to diesel fumes/exhaust from locomotive exhaust and from diesel powered on track equipment; asbestos from insulation in buildings and facilities; creosote from track ties and bridge timbers and silica from ballast dust." Plaintiff contends that his cancer is the result of the Defendant utilizing known cancer-causing materials which it knew or should have known was toxic to its employees' health.

II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 68, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

III.  Analysis

The validity of releases under the Federal Employers' Liability Act ("FELA") raises a federal question to be determined by federal law rather than state law. *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 335, 108 S. Ct. 1837, 1842, 100 L.Ed.2d 349 (1988); *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359, 361, 72 S. Ct. 312, 314, 96 L.Ed. 398 (1952). Section 5 of the FELA provides that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this [act] shall to that extent be void." 45 U.S.C. § 55. However, "[w]here controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 631 (1948).

There is a split in the circuits as to the validity of a release of future claims under FELA. The Sixth Circuit has adopted a bright-line standard in *Babbitt v. Norfolk & W. Ry. Co.*, 104 F.3d 89, 92 (6th Cir. 1997). Under *Babbitt* a release must "reflect a bargained-for-settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." *Id.* at 93. In contrast, the Third Circuit in *Wicker v. Consol. Rail Corp.,* 142 F.3d 690 (3rd Cir. 1998) uses a "fact-intensive" analysis where "a release may be strong, but not conclusive, evidence of the parties' intent." *Id.* 42 F.3d at 701. Under *Wicker* "a release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. Claims relating to unknown risks do not constitute 'controversies,' and may not be waived under § 5 of FELA." *Id*. The parties have not cited, and the Court has not found, an Eighth Circuit case where the court has adopted either standard.

The Court finds that the 2004 Release is not valid as to the allegations in the Complaint under either *Babbitt* or *Wicker*. The 2004 Release settled a claim related to an accident on or about December 10, 2002, at or near Amory, Mississippi. *See Ribbing v. Union Pac. R.R. Co.,* 484 F. Supp.

5

3d 676 (D. Neb. 2020). Defendant's inclusion of "any and all other claims, whether known or unknown, including but not limited to illness, injuries, or damages resulting from alleged exposure to noise, smoke, fumes, dust, mixed dusts, gases, chemicals, fibers, or any other type of exposure" which is added to the specific settlement of claims arising out of the 2002 accident is exactly the type of language which violates Section 5.

The validity of the 2017 Release, however, is not as clear. The 2017 Release refers to claims "arising out of or resulting from any alleged exposure to toxic or harmful substances, as described in **Releasor's petition, complaint, statement, discovery, including any expert reports and medical records**. . .." There is no indication in the record what is described in Releasor's petition, complaint, statement or discovery. Neither party discusses it in their briefs. The only hint that the court gets as to the subject matter of the petition is that asbestos is referred to at least three times in the Release.

The 2017 Release defines exposure to include "any and all substances or conditions to which the undersigned claimed he/she was exposed, or to any alleged potential exposure claimed. . ." The next paragraph recites diseases, conditions, or injuries released including, but not limited to, non-malignant diseases of the lungs, respiratory and pulmonary system. The paragraph goes on to include cancers "of any kind, and increased risk of cancer, including lung cancer, mesothelioma, colon cancer, laryngeal cancer, gastrointestinal cancer, brain cancer, stomach cancer, bladder cancer, throat cancer, tongue cancer, squamous cell mucoepidermoid cancer, head and neck cancer, oropharyngeal cancer or other allegedly asbestos-related cancer of any form. . .." The list is exhaustive.

Defendant argues that the text of the 2017 Release makes it clear that Plaintiff knew he was waiving claims regarding exposure to all toxic substances in the workplace. As proof, Defendants provide a "Respiratory and Health History Questionnaire" where Plaintiff checked a box to indicate that he had frequent exposure to sand or ballast. The questionnaire is not dated.

Plaintiff argues that the 2017 Release contains a broad recitation of occupational exposures and is the sort of laundry list general release that is disfavored under FELA. Further, Plaintiff

contends that it is not reasonable that an employee of 30 years would settle all known and unknown risks from all toxic substances for $9,500. Plaintiff cites a similar case in the Nebraska district court, *Butler v. Union Pac. R.R. Co.*, 496 F.Supp. 3d 1300 (D. Neb. 2020).

In the Nebraska case, Robert Butler, a long-time employee of the railroad, brought a claim against his employer for negligent exposure to carcinogens that caused him to develop colorectal cancer. The railroad countered that his action was barred by a settlement and release that Butler executed regarding an asbestosis claim. Butler had been diagnosed with asbestosis at the time of the release. In exchange for $5,000, Butler agreed to release the railroad from any claims including "illness, disease, cancers, potential cancers, injury and death from any Occupational Exposures . . . known or unknown. . . ." *Id.* at 1302. Occupational Exposures included "any and all exposures to "any toxic materials, metals or chemicals, including without limitation asbestos, dusts, fumes, gases, fuels, combustion products and by-products, exhausts, solvents, cleaners, lubricants, paints, paint thinners, silica, whether alleged or unalleged. . . ." *Id.* Butler retired at the time he signed the release.

Years later, Butler was diagnosed with colon cancer and the railroad argued on summary judgment that the release precluded Butler's suit. The court disagreed. The court found that the release was "limited at the outset to the subject matter of the claim that was settled—a claim for injuries caused by asbestos." *Id.* at 1306. The court found that the release with its broad definition of occupational exposures, is the sort of dreaded "laundry list" general release that is disfavored under the FELA. Further, the court stated, "It does not stand to reason that an employee with a thirty-seven-year work history would settle all the known and unknown risks from a plethora of toxins for the sum or $5000." *Id.* The railroad's motion for summary judgment was denied and the court found that there was "at least a question for the jury as to the intent of the parties in executing the contract." *Id.*

The Court finds the *Butler* case to be instructive here. While the Court does not have the background information regarding the content of Plaintiff's 2017 petition, it is evident that Defendant attempted to attach as many other types of diseases and toxins as possible to the settlement of the

Plaintiff's claim. As the court aptly stated, the Court finds that the 2017 Release does not pass muster under 45 US.C. § 55 and is, therefore, ineffective under FELA to preclude Plaintiff's claim.

Defendant's motion for summary judgment (ECF NO. 12) is DENIED.

IT IS SO ORDERED this 17th day of April, 2023.

_____
James M. Moody Jr.
United States District Judge